UNITED STATES DISTRICT COURT

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KAREN DIOSDADO, | Case No.  1:25-cv-00964-SKO |
| Plaintiff, | |
| v. | **ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |
| FRANK BISIGNANO, Commissioner of Social Security | (Doc. 1) |
| Defendant. | |

**I.    INTRODUCTION**

Plaintiff Karen Diosdado ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for supplemental security income ("SSI") under the Social Security Act (the "Act").  (Doc. 1).  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

**II.    BACKGROUND**

Plaintiff was born in 1974.  (Administrative Record ("AR") 82).  She earned a high school diploma and completed two years of college.  (AR 58).  Plaintiff filed an application for SSI, alleging she became disabled on September 1, 2018, due to polysubstance abuse (methamphetamine and marijuana), hepatitis C virus, and generalized anxiety disorder.  (AR 19).

---

[1] The parties consented to the jurisdiction of a U.S. Magistrate Judge.  (*See* Doc. 10).

**A.    Relevant Evidence of Record[2]**

On November 1, 2023, Dr. Tiadora Kim, Psy.D. completed a comprehensive clinical psychological evaluation, including a "medical source statement." (AR. 986, 992). The medical source statement reflects Dr. Kim's opinion that Plaintiff was "moderately impaired" as to her "[a]bility to maintain effective social interaction on a consistent and independent basis with others including supervisors, co-workers, and the public," as well as in her ability to "[a] adapt to the usual stresses and pressures common to a competitive work environment including completing a normal workday or workweek responding and adapting appropriately to changes in a work setting." (AR 992). The medical source statement also reflects Dr. Kim's opinion that, "[p]er clinical interview and behavioral observation, [Plaintiff] has extremely poor distress tolerance and becomes easily agitated with others," as well as the opinion that Plaintiff "likely requires some assistance and support to adapt to normative workplace stressors and be able to respond appropriately." (*Id.*).

**B.    Administrative Proceedings**

The Commissioner denied Plaintiff's application for benefits initially on October 21, 2022, and again on reconsideration on November 22, 2023. (AR 100–07, 117–21). Consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 131). The ALJ conducted a hearing on May 9, 2024. (AR 51–81). Plaintiff appeared at the hearing with her attorney and testified as to her alleged disabling conditions and work history. (AR 57–77).

A Vocational Expert ("VE") also testified at the hearing. (AR 77–80). In relevant part, the VE testified that "an individual with the same age, education [as Plaintiff], and no work experience" who was "limited to medium work, simple, routine tasks, occasional interaction with supervisors, coworkers, and the public, no collaborative work on a team, no production pace work examples would be work on an assembly line or at a fast food restaurant during meal time" would be able to work as a window cleaner, waxer, and wall cleaner. (AR 77–78). The VE also testified that an inability to maintain a normal workday or workweek 20 percent of the time, being off task for 10 minutes out of every hour, and/or requiring additional supervision for 10 minutes out of every hour

---

[2] Because the parties are familiar with the medical evidence, it is summarized here only to the extent relevant to the contested issues.

would be preclusive of any competitive work.  (AR 78–79).

**C.      The ALJ's Decision**

In a decision dated August 9, 2024, the ALJ found that Plaintiff was not disabled.  (AR 22–29).  The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 404.1520.  (AR 19–29).  The ALJ decided that Plaintiff had not engaged in substantial gainful activity since September 1, 2028.  (AR 19).  At step two, the ALJ found Plaintiff's following impairments to be severe: polysubstance abuse (methamphetamine and marijuana), hepatitis C virus, and generalized anxiety disorder.  (AR 19).  The ALJ then determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three).  (AR 19–22).

The ALJ assessed Plaintiff's residual functional capacity (RFC)[3] and applied the assessment at steps four and five.  *See* 20 C.F.R. § 404.1520(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity . . . . We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps.").  The ALJ determined that Plaintiff had the RFC:

> to perform medium work as defined in 20 CFR 416.967(c) except limited to simple routine tasks, occasional interaction with supervisors, coworkers and public, no collaborative work on a team, and no production paced work (work on assembly line or at a fast food restaurant during mealtime.

(AR 22; *see also id* 22–28).  Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms," the ALJ rejected Plaintiff's subjective testimony as to "the intensity, persistence and limiting effects of these symptoms" as being "not entirely consistent with the medical evidence and other evidence in the record."  (AR 26).

---

[3] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of eight hours a day, for five days a week, or an equivalent work schedule. TITLES II & XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, Social Security Ruling ("SSR") 96-8P (S.S.A. July 2, 1996).  The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments.  *Id*.  "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record, including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

The ALJ then determined that Plaintiff had no past relevant work (step four) but that, given her RFC, she could perform a significant number of jobs in the national economy (step five). (AR 28–29). In making this determination, the ALJ relied on the VE's answers to a series of hypothetical questions the ALJ posed to the VE during the hearing. (AR 77–78). The VE testified that a person with the RFC specified above could perform the jobs of window cleaner, floor waxer, and wall cleaner. (*See* AR 29 (citing AR 77–78)). The ALJ ultimately concluded Plaintiff was not disabled at any time after June 20, 2022, the alleged onset date. (AR 29).

Plaintiff sought review of this decision before the Appeals Council, which denied review on June 16, 2025. (AR 1–6). Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 404.981.

### III.    LEGAL STANDARD

**A.    Applicable Law**

An individual is considered "disabled" for purposes of disability benefits if [they are] unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). However, "[a]n individual shall be determined to be under a disability only if [their] physical or mental impairment or impairments are of such severity that [they are] not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520). The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If

4

not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing [their] past relevant work.  If so, the claimant is not disabled.  If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy.  If so, the claimant is not disabled.  If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).  "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520).

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue [their] past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B.    Scope of Review**

"This court may set aside the Commissioner's denial of [social security] benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted).  "Substantial evidence . . . is 'more than a mere scintilla,'" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020).

"This is a highly deferential standard of review." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009).  "The ALJ's findings will be upheld if supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted).  Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g., Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner." (citations omitted)).

Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*,

143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti*, 533 F.3d at 1038 (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

## IV. DISCUSSION

Plaintiff asserts one claim of error: The ALJ improperly failed to translate significant medical findings from Dr. Kim into the assessed RFC. (*See* Doc. 12 at 6–15). The Commissioner counters that the ALJ properly evaluated the medical opinion evidence and incorporated the opinion into the assessed RFC. (Doc. 16 at 5–9). As discussed below, the ALJ erred in failing to either fully translate a credited medical opinion into the assessed RFC or explain why the opinion was not translated into the RFC in full.

## A. Legal Standard

"In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record." *Robbins*, 466 F.3d at 883. "[A]n RFC that fails to take into account a claimant's limitations is defective." *Valentine*, 574 F.3d at 690.

"Where an ALJ accords substantial or great weight to a physician's opinion, he must either incorporate their findings into the RFC or offer an explanation for why he chose not to accept them." *Sahyoun v. Saul*, No. 2:18-CV-576-EFB, 2020 WL 1492661, at *3 (E.D. Cal. Mar. 27, 2020); *see also Martin v. Comm'r of Soc. Sec. Admin.*, 472 F. App'x 580 (9th Cir. 2012) (unpublished) ("The administrative law judge (ALJ) erred when formulating Martin's residual functional capacity (RFC) because the RFC neither incorporated Dr. Steiner's opinion of Martin's work limitations nor gave specific and legitimate reasons for rejecting it."); *Neufeld v. Berryhill*, No. 2:16-cv-03644 (VEB),

2018 WL 4739699, at *6 (C.D. Cal. Sept. 30, 2018) ("Having afforded 'great weight' to the opinions of Dr. Bartell and Dr. Loomis, the ALJ was bound to either incorporate their findings as to Plaintiff's limitations or explain why she decided not to accept them."); *Bain v. Astrue*, 319 F. App'x 543, 545–46 (9th Cir. 2009) (holding ALJ erred in not including consultative examining psychologist's moderate limitations in the RFC, despite specifically crediting these limitations in the opinion); *Flores v. Saul*, No. 1:18-cv-01523-SKO, 2020 WL 509098, at *5 (E.D. Cal. Jan. 31, 2020) (finding ALJ erred by assigning great weight to consultative psychologist's opinion, but failing to provide specific and legitimate reasons for rejecting significant portions of the opinion); *Wascovich v. Saul*, No. 2:18-cv-659-EFB, 2019 WL 4572084, at *3–5 (E.D. Cal. Sept. 20, 2019) (finding ALJ erred by assigning substantial weight to consulting examiner's opinion that the plaintiff had a mild to moderate impairment in her capacity to maintain regular attendance, but failed to account for the limitation in the RFC); *Harrell v. Kijakazi*, No. 1:20-cv-00614-GSA, 2021 WL 4429416, at *4 (E.D. Cal. Sept. 27, 2021) ("The ALJ was under no obligation to accept a medical opinion he found unsupported by the record. But, having clearly stated that he was according [the physician]'s opinion great weight, the ALJ was under an obligation to account for the moderate limitations [the physician] identified irrespective of the broader reasoning in support of the RFC."). An ALJ errs when they do not explain why they did not adopt all findings or limitations from a persuasive opinion. *Patterson v. Comm'r of Social Sec.*, No. 2:23-cv-00635 AC, 2024 WL 4216810, at *8 (E.D. Cal. Sept. 17, 2024).

In examining whether RFC limitations account for some opined non-exertional limitations, the Ninth Circuit has held that an "ALJ's RFC finding properly incorporated the limitations . . . related to pace and the other mental limitations regarding attention, concentration, and adaption." *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008). However, courts in this circuit have split on whether RFC limitations to simple/routine tasks with limited public contact account for all moderate non-exertional limitations. *Macias v. Saul*, No. 1:19-cv-01187-BAM, 2021 WL 856423, at *6 (E.D. Cal. Mar. 8, 2021) (collecting cases and noting that "Courts have rejected the argument that a similar limitation to simple tasks in the RFC adequately accounts for moderate limitations in the ability to maintain regular attendance or complete a normal workday."). Courts

within this district have recently noted that the district court case law "tends to favor the view that a restriction to simple/routine tasks with limited public contact does not account for the moderate limitations . . . identified in interacting with supervisors and peers, handling work related stressors, maintaining regular attendance, and completing a normal workweek without interruption." *Harrell*, 2021 WL 4429416, at \*6; *Lamar v. Comm'r of Soc. Sec.*, No. 1:24-cv-00504-EPG, 2025 WL 318294, at \*4 (E.D. Cal. Jan. 28, 2025) (noting split and finding that limitations in RFC did not account for all moderate limitations opined by physician); *Berenisia Madrigal v. Saul*, No. 1:18-cv-01129-SKO, 2020 WL 58289, at \*5–6 (E.D. Cal. Jan. 6, 2020) (finding that ALJ's RFC of simple, routine tasks with limited peer and public contact did not account for opined limitations in "completing a normal workday or work week due to her psychiatric condition, moderate difficulties dealing with stress and changes encountered in the workplace, and an up to moderate likelihood that she would emotionally deteriorate in a work environment").

**B.    Analysis**

In a medical source statement from a November 1, 2023 examination report, Dr. Tiadora Kim, Psy.D, noted that Plaintiff had moderate impairments in the ability to maintain effective social interaction on a consistent and independent basis with others including supervisors, co-workers, and the public.  (AR 992 (also noting that "claimant has extremely poor distress tolerance and becomes easily agitated with others")).  Dr. Kim also noted that Plaintiff had moderate limitations in the ability to adapt to the usual stresses and pressures common to a competitive work environment including completing a normal workday or workweek; and responding and adapting appropriately to changes in a work setting.  (AR 992 (also noting that "Claimant likely requires some assistance and support to adapt to normative workplace stressors and be able to respond appropriately")).

In evaluating the opinion of Dr. Kim, the ALJ reasoned as follows:

> Consultative examiner Tiadora Kim, Psy.D., opined that the claimant was moderately impaired in the ability to maintain effective social interaction on a consistent basis with others including supervisors, co-workers, and the public; and adapt to the usual stresses and pressures common to a competitive work environment including completing a normal workday or workweek and responding and adapting appropriately to changes in a work setting (Ex. 13F). The undersigned finds this opinion persuasive because it is supported by Dr. Kim's own findings on exam and is consistent with the record as a whole, which includes evidence of generally normal mental status findings with the exception of agitated, depressed, irritable and anxious mood.

8

(AR 27).  Based in part on that opinion, the ALJ determined that Plaintiff retained the "residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) except limited to simple routine tasks, occasional interaction with supervisors, coworkers and public, no collaborative work on a team, and no production paced work (work on assembly line or at a fast food restaurant during mealtime)."  (AR 22).

The question before the Court "is whether the ALJ, having accepted [Dr. Kim's] opinion, appropriately translated the moderate limitations from that opinion into concrete restrictions in the RFC."  *Harrell*, 2021 WL 4429416, at *6–7; *see also id.* ("But, having clearly stated that he was according Dr. Stafford's opinion great weight, the ALJ was under an obligation to account for the moderate limitations Dr. Stafford identified irrespective of the broader reasoning in support of the RFC.").  In answering this question, the Court is mindful that an ALJ's RFC findings need only be consistent with assessed limitations and not identical to them.  *See Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1222–23 (9th Cir. 2010); *Wascovich*, 2019 WL 4572084, at *5 ("This does not necessarily mean that the ALJ was required to explicitly transcribe the limitation in the RFC.  Rather, he is required to account for it in his 'translation.'"); *Rounds v. Comm'r of Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015) ("[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC."); *Ashlock v. Kijakazi*, No. 1:21-cv-01687-GSA, 2022 WL 2307594, at *3 (E.D. Cal. June 27, 2022) ("The RFC need not mirror a particular opinion; it is an assessment formulated by the ALJ based on all relevant evidence.").

Here, the Court finds that the RFC did not completely account for the opined limitations in Dr. Kim's persuasive opinion.  The limitations to simple routine tasks, occasional contact with supervisors, coworkers, coworkers, and public; no collaborative work on a team; and production paced work addressed Dr. Kim's opinion as to Plaintiff's social interaction limitations.  (*Id.*).  But Dr. Kim also noted moderate limits in Plaintiff's other abilities, including in the abilities to "adapt to the usual stresses and pressures common to a competitive work environment including completing a normal workday or workweek; and responding and adapting appropriately to changes in a work setting."  (AR 992).  And those limitations were not "translated" into the ALJ's assessed RFC. *Wascovich*, 2019 WL 4572084, at *5.  After crediting Dr. Kim's medical source statement, the ALJ

needed to address either (1) how the ALJ translated Dr. Kim's remaining limitations as to Plaintiff's ability to adapt to the usual stresses and pressures common to a competitive work environment including completing a normal workday or workweek and responding and adapting appropriately to changes in a work setting into the RFC, or (2) why the ALJ did not translate this limitation into the RFC. *See Stubbs*, 539 F.3d at 1174. Absent an explanation for failing to account for these limitations, the ALJ's RFC determination is not supported by substantial evidence. *See Sahyoun*, 2020 WL 1492661, at *3; *Robbins*, 466 F.3d at 886 ("an ALJ is not free to disregard properly supported limitations"); *Byrd v. Colvin*, 2017 WL 980559, at *8 (D. Or. Mar. 14, 2017) ("Here, the ALJ gave great weight to [the] opinion, but the RFC failed to take into account all of the limitations identified by [the doctor], and the ALJ failed to explain why she did not include the limitations in the RFC. As a result, the ALJ erred in formulating the RFC.").

Defendant contends that Dr. Kim's opined limitations are accounted for by the assessed RFC. (Doc. 16 at 6–8). The Court disagrees.

Defendant first argues that the RFC adequately accounted for Plaintiff's "moderate" limitations considering that "moderate" "is defined is as functioning 'independently, appropriately, effectively, and on a sustained basis,'" (Doc. 16 at 7 (quoting 20 C.F.R., Part 404, Subpt. P, App. 1 § 12.00.F.2.c)), and that a "moderate" limitation "means '[t]here is more than a slight limitation in this area, but the individual can still function satisfactorily,'" (*id.* (quoting *Rose M.E. v. Saul*, No. 5:20-cv-01199-AFM, 2021 WL 1612091, at 3 (C.D. Cal. April 26, 2021))). However, in formulating an RFC, the ALJ must account for *all* of a claimant's medically determinable impairments, including those that are not "severe," and evaluate "all of the relevant medical and other evidence." 20 C.F.R. § 416.945(a)(1); *Valentine*, 574 F.3d 690 (an RFC that "fails to take into account a claimant's limitations is defective"). Therefore, an ALJ errs when, as here, an ALJ provides an incomplete RFC ignoring "significant and probative evidence." *Hill v. Astrue*, 698 F.3d 1153, 1161-62 (9th Cir. 2012). Here, the ALJ unambiguously credited Dr. Kim's opinion and incorporated other moderate limitations into the assessed RFC. Therefore, the ALJ was obligated to adequately address Dr. Kim's opinion as to Plaintiff's moderate limitations as they related to "adapt[ing] to the usual stresses and pressures common to a competitive work environment including completing a normal workday or

workweek; and responding and adapting appropriately to changes in a work setting." (AR 992); *see also Macquarrie v. Comm'r of Soc. Sec.*, No. 1:21-CV-00072-CDB, 2023 WL 8242069, at \*7 (E.D. Cal. Nov. 28, 2023).

Defendant next cites a Ninth Circuit case, *Stubbs-Danielson v. Astrue*, 539 F.3d 1169 (9th Cir. 2008), to support the proposition that an RFC limited to simple work "accommodates a variety of moderate findings, including . . . moderate limitations in handling workplaces stressors." (Doc. 16 at 7, *see id.* at 7–8). However, this case is distinguishable from the instant matter.

In *Stubbs-Danielson v. Astrue*, the Ninth Circuit noted that an "ALJ's RFC finding properly incorporated the limitations . . . related to pace and the other mental limitations regarding attention, concentration, and adaption." *Id.* at 1174. However, courts have frequently distinguished *Stubbs-Danielson* as inapplicable to cases with opined limitations beyond concentration, persistence, or pace. *Macias*, 2021 WL 856423, at \*6 (distinguishing *Stubbs-Danielson* as "the moderate restrictions at issue here involve limitations in maintaining attendance and completing a normal workday, not limitations in concentration, persistence or pace"); *Harrell*, 2021 WL 4429416, at \*6 (finding that *Stubbs-Danielson* did not "specifically address the extent to which a limitation to simple and routine tasks appropriately accounts for the limitations identified"); *Warren v. Saul*, No. 8:19-CV-02270-PD, 2021 WL 259435, at \*5 (C.D. Cal. Jan. 26, 2021) (finding case factually distinguishable from *Stubbs-Danielson* where assessment that Plaintiff could perform work involving simple, repetitive tasks requiring only simple work-related decisions and involving only occasional changes in a routine work setting, with unlimited contact and interaction with supervisors as necessary to receive work-related instructions but otherwise only occasional interaction with coworkers, failed to address the moderate limitations found by physician in plaintiff's ability to maintain regular attendance, interact with a supervisor, or complete an eight-hour workday in a regular workplace); *Sahyoun*, 2020 WL 1492661, at \*4 (noting factual distinction from *Stubbs-Danielson* where physician did not opine that plaintiff could sustain work involving simple, repetitive tasks despite his moderate limitations in maintaining regular attendance, completing a normal workday or work). As in those cases, here Dr. Kim opined other moderate limitations beyond concentration, persistence, or pace. (*See* AR 922). *Stubbs-Danielson* therefore does not exempt the

ALJ from needing to account for Dr. Kim's other opined limitations.

Defendant also cites district court cases within this circuit, contending that Dr. Kim's opined limitations are accounted for within the ALJ's assessed RFC. (Doc. 16 at 8).  But all of the case law cited is over five years old, and, as discussed above, more recent caselaw "tends to favor the view that a restriction to simple/routine tasks with limited public contact does not account for the moderate limitations . . . identified in interacting with supervisors and peers, handling work related stressors, maintaining regular attendance, and completing a normal workweek without interruption." *Harrell*, 2021 WL 4429416, at *6; *Lamar*, 2025 WL 318294, at *4; *Berenisia Madrigal*, 2020 WL 58289, at *5–6.  Defendant's cited caselaw therefore does not demonstrate that all of Dr. Kim's opined limitations were accounted for within the RFC.

Accordingly, the Court finds that the ALJ's RFC determination is not supported by substantial evidence.

**C.      Harmlessness Review**

The Court must now consider whether the ALJ's error was harmless.  *Molina*, 674 F.3d at 1115.  Courts look to the record as a whole to determine whether the error alters the outcome of the case.  *Id*.; *March v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015).  An error is harmless "where it is inconsequential to the ultimate nondisability determination." *Molina*, 674 F.3d at 1115 (citations omitted) (first quoting *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998), and then quoting *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996)).

The Court cannot conclude that the error is harmless.  When asked whether there would be any work available for an individual who could not "maintain a normal workday or workweek 20 percent of the time," the VE replied "no."  (AR 78).  Additionally, the VE testified that if an individual were off task for 10 minutes out of every hour and/or required special supervision or additional supervision for 10 minutes out of every hour, those limitations would be preclusive of competitive work.  (AR 79).  In light of the VE's testimony, had the ALJ incorporated Dr. Kim's opinion that Plaintiff had moderate limitations in her ability "adapt to the usual stresses and pressures common to a competitive work environment including completing a normal workday or workweek; and responding and adapting appropriately to changes in a work setting," (AR 992), the disability

determination may have been different. Thus, the Court cannot say that the error was not "inconsequential to the ultimate nondisability determination." *Molina*, 674 F.3d at 1115.

**D.      Remand**

In a case where the ALJ's determination is not supported by substantial evidence or is tainted by legal error, the court may remand the matter for additional proceedings or an immediate award of benefits. Remand for additional proceedings is proper where (1) outstanding issues must be resolved, and (2) it is not clear from the record before the court that a claimant is disabled. *See Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004).

Here, the Court finds that remand for further proceedings is warranted. *See, e.g.*, *Bunnell v. Sullivan*, 947 F.2d 341, 348 (9th Cir. 1991) (affirming a remand for further proceedings where the ALJ failed to explain with sufficient specificity the basis for rejecting the claimant's testimony); *Byrnes v. Shalala*, 60 F.3d 639, 642 (9th Cir. 1995) (remanding the case "for further findings evaluating the credibility of [the claimant's] subjective complaints"). On remand, the Commissioner shall either incorporate all of the limitations assessed by Dr. Kim in the assessed RFC or explain why any such limitation is not incorporated into the assessed RFC.

### V.      CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is therefore VACATED, and the case is REMANDED to the ALJ for further proceedings consistent with this Order. The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff Karen Diosdado and against Defendant Frank Bisignano, Commissioner of Social Security.

IT IS SO ORDERED.

Dated:    **January 28, 2026**                    /s/ *Sheila K. Oberto*
                                             UNITED STATES MAGISTRATE JUDGE